Let me see if I can is uncertain. We're not dealing with a pension plan or health insurance plan or something where there's a need an obvious need for an ongoing administration. We're dealing with severance benefit that involves a one time event and a one time lump sum payment. Because of this, there's an issue as to whether or not ERISA applies because we're dealing with something that doesn't require an ongoing administration. You're relying largely on Fort Halifax? Yes. Yes. And in two ways we're relying on Fort Halifax. One is because it doesn't need the ongoing administration. And then also the underlying reason in Fort Halifax was the state law and the federalism principles. So here we have state common law, principles of contract, the requirement of consideration. And in Fort Halifax we had a state statute requiring severance. And both are equally important, state common law, statute. Here the plan did not provide for the additional condition of the return of property and there was no contractual obligation made after the deal was done. You have a unilateral contract, there's an offer made by the plan, it's accepted by performance, it's accepted by release, there's nothing else to be added. If something else is to be added, then it's not within the plan. But there was still discretion to be exercised by the administrator, was there not? Under the plan. So the plan, under the plain language of the plan, there was a provision for offset, not a provision for not paying for not returning the property. So in the plain language, which the administrator is bound by, plain language of the plan says you may offset if property is not returned. It doesn't say we don't have to pay you if it's not returned, we may offset. Nothing was added for that. So that really is both a jurisdictional issue and an abuse of discretion issue. The administrator may only interpret the plan and there's nothing in the plan that requires the return of the documents, nothing. It only requires for offset. Well the plan also refers to a release, doesn't it? Yes. And there's nothing about a release that requires the return of documents. A release is I release all claims against you. The employee releases all claims against the employer, whatever they may be. It's not the other way around. You affirmatively give us documents. It's a release. A release is not give us documents. A release is release your claims. But if you've, let's say, stolen property from the employer, they're certainly not going to give you a release from any future claims. I think that's a very narrow reading of release. I don't know the exact wording in the plan. I don't have it in mind about the release. So the release is not from Erickson for taking property. The release is the employee releasing any claims the employee may have for discrimination, FMLA. Tell us what the plan says about release. It simply says we'll sign a release. It doesn't provide for anything that talks about anything in addition to a release. The we being Erickson will sign a release. No. The employee will sign a release. So it's not Erickson releasing any claims for stealing property that they may not have had for wrongful termination. So there is nothing. So they're changing the deal at the end. There's already a termination and they want to add another condition to the plan. Is your argument that saying you have to sign the release doesn't also mean you have to abide by the release? In other words, you could sign it but say, I don't care. It's just a piece of paper. I'm not going to comply with it. And that's, you're still entitled to benefits? No. You have to abide by the release. The release says I'm not going to sue you for wrongful termination. That's not an issue. He's not making that claim. He's simply saying you can't add something in addition to the release to the plan. And that addition was returning property. There was a provision in the plan for offsetting any property retained by the employee. They didn't do that. They could have done it. What they said was not returned was his work product underlying the final documents. They had all the final documents of his work, but when he messed up in returning his laptop and cleared everything out, they're saying, well, we don't have his underlying work product that shows how he got those documents. Well, if they needed that, the easiest way to value that would be the time that someone they had to pay to sit down with him and say, how did you work out these final documents, these final proposals? They never needed that. They could have valued it. They didn't attempt it because there was no, there is nothing lost. So, and there's no dispute that anything was retained by Mr. Gomez. So, at some point, ERISA's reach has to stop. And that point. You raised the issue about all that was required was this offset. Did you raise that in the record? Can you point me to that issue? Well, if you want to continue, and you can look when the other side is speaking and mention it during rebuttal. Yes. I thought that that was raised. There was two points that was raised. One is return of the property, and it had to do with offset. And I'll look for that. The other point is, in both of the plans, they say that this severance agreement, I don't mean the plan, but what was required to be signed as the release was a severance agreement. And the severance agreement says it supersedes all other agreements. So, how can that be? How can you supersede the plan? How can a severance agreement say, all right, we're going to completely wipe out and abrogate the plan, and now this is the new deal. And the new deal now requires an additional condition. That additional condition is return of property. Again, that cuts both for, it's outside of can't change the deal after it's done, and it's an abuse of discretion. It's legally incorrect, and someone cannot reasonably make that interpretation under the plan. If there is, it's such a stretch that if it's, if it is at all reasonable, there is that conflict of interest that comes into play because it's self-funded. So, there is, normally you wouldn't look at that unless it was not legally correct, but it's not legally correct, it's self-funded, and that's another factor that has to be considered. Your Honors, we think it's, it really just comes down to whether or not the additional term of requiring property was part of the plan or not. It's not part of the plan. Because it's not part of the plan, ERISA does not cover. If ERISA covers, it's an abuse of discretion to add additional conditions to the plan. The administrator would have to follow state law. All right. Thank you. Thank you. You've saved time for rebuttal, and you, of course, haven't used nearly all your time. You'd reserve three minutes, but we'll give you five minutes on rebuttal. Thank you, Your Honor. All right, Mr. Bell. Good morning, Your Honors. May it please the Court. Turning first to the appellant's argument regarding jurisdiction, he claims that the District Court did not have jurisdiction because ERISA doesn't apply. Under this Court's peace test, for, to fall under ERISA, the plan has to exist. It has to not come within those DOL safe harbor provisions, and it has to be established or maintained by an employer in order to benefit its employees. Here the plan obviously exists. It's in writing. There have been cases where courts have addressed whether or not a plan that's not in writing is an ERISA plan or not, and that's possible. It's perhaps not advisable, but it's possible. But here it's in writing. The standard and top contributor plans both provide explicitly they are governed by ERISA, and the severance agreement and release, which I'll just call the release from here on out, provides at the very start that it is issued in accordance with the terms of those plans. What do you do with Fort Halifax? With Fort Halifax? Fort Halifax involved a state statute with respect to a one-time lump sum distribution of severance funds. There was no need for any sort of ongoing administration whatsoever. Same thing with Wells. They didn't have a state statute, but again you had a one-time lump sum distribution based on one event, a plant closing. They Here you have a severance agreement that applies to employees across the country, 10,000 plus employees of Erickson, that are given notice that this severance agreement is going to apply to them and that they may have the opportunity to obtain severance if they meet the conditions under the plans. It was obviously maintained to benefit employees. It gives the required ERISA disclosures of rights and remedies. It's required, or Erickson filed the required form 5500 reports for the plans. I do note that the appellant makes note in his reply that those forms were not filed for the top contributor plan. They weren't required for the top contributor plan. There's a specific DOL reg on this point exempting welfare plans that are established for the benefit of top employees, highly compensated folks, and that language was specifically parroted in the top contributor plan on page 59. So there's another attempt to comply with ERISA. What is, cite for me please the page or paragraph of the, we'll just use the Erickson standard severance plan, that would provide about this release that you base your claim that ERISA applies, that it's in the plan. With respect to the release, Your Honor? Yes, sir. The standard severance plan provides on record 49, or, I apologize, Your Honor, it's on record 50. Severance compensation is contingent upon the participant signing and not revoking. Okay, this is paragraph 4. Paragraph 4, Your Honor, and not revoking a satisfactory waiver and release of claims in favor of Erickson. That exact same language appears in the top contributor plan. So with respect to both plans, participants are put on notice that in order to receive the benefits, they're going to have to sign this severance agreement and release in a form satisfactory to Erickson. All of the terms of that release are not in this plan, nor do they have to be, but they are put on notice that it has to be a satisfactory release that they sign. And as the appellant just indicated in her argument, of course signing it means complying with it. That is what is expected, and that's why that is in there. The plans required administrative discretion. They were, each individual severance under the plan is analyzed independently by the plan administrator. This is not a plant closing or a layoff where everybody's gone and everybody gets severance because they're no longer there. There are a variety of conditions that can entitle someone or not entitle someone to severance under the various plans, and the plan administrator is vested with that discretion under ERISA to determine whether or not those have been made. There's a lot of reliance, really, since the complaint was filed in this case on the Puerto Rico case of Gautier-Figueroa, which the appellant has been citing for a case holding that a lump sum severance plan was not an ERISA plan. There's a few crucial differences in that case. Primarily, that plan only applied to Puerto Rico employees, and the central tenet of ERISA, why we have ERISA, is to provide this uniform body of case law to be applied across the country to all employees that could be entitled to severance under the plan. That wasn't an issue in Gautier-Figueroa because we're only dealing with Puerto Rico employees, so the only state's law that could possibly apply to their claims was Puerto Rico or the territory's law. So that wasn't even an issue in that case. Furthermore, the severance benefits in that case were, it's a simple mathematical formula. It was simply, you're here a certain amount of time, you get a certain amount of severance. And with regard to these plans, there are various qualifications and disqualifications that might come into play to allow somebody to have severance or not have severance under the plan. So it's distinguishable in that way. In addition, Erickson severance plans provide for repayment of COBRA premiums, and those premiums are only to be repaid if the employee properly elects COBRA and then does not obtain subsequent coverage. So that requires this ongoing monitoring to determine whether or not the employee has done that or not. And then there's also the requirement of repayment of severance benefits if the employee is re-employed by Erickson. And with the top contributor plan, there are determinations that have to be made as far as whether or not the employee may have changed jobs during the employment that might disqualify them from being a top contributor, and also whether or not their performance had suffered to an extent that they were properly given notification that they were no longer considered a top contributor under the plan. So there are a wide variety of areas of discretion that are afforded under this plan that were not involved in that plan. And furthermore, they were followed in this case. He was given the opportunity to appeal his determination to the plan administrator. He was given an opportunity to appeal that determination to the plan administrative committee, and then he was specifically given the notice of rights that says you can then appeal this to the district court, which he did. So clearly there was this attempt by Erickson all along to make sure that it's complying with ERISA. What's interesting chronologically is he, the appellant, cites the Ebenstein case out of the, out of Eastern District of New York where there was an initial attempt by Erickson in that case to hold that plan not covered by ERISA. The court disagreed. The court said, no, it is. It's, it's an effective period of plan. That plan is stretched over time. It's not based on a single event, like Fort Halifax. Reasonable employees under that plan would expect severance pay if they met the conditions. The eligibility for severance is determined on an individual employee-by-employee basis, and you have to do more than simple math to administer it. So they said, no, Erickson, that is an ERISA plan, and you need to comply with ERISA. Erickson took that to heart 13 years ago and made sure that it amended its plans in order to comply with ERISA, provide all the disclosures, make sure that it's affording participants the rights under ERISA. The Fourth Circuit in Ahuja v. Erickson didn't even reach that issue because it was clearly an ERISA case. They treated it as, these as ERISA plans and interpreted them as such. And now here we are another five years down the line with this new plan that has been implemented and now for a decade as an ERISA plan and afforded countless employees the rights under that plan is now being, is now being challenged. Lastly, this argument that the release should be considered separately from ERISA, that it should somehow be its own breach of contract claim, the court didn't consider that argument in Gautier-Figueroa because it found the underlying plan was not covered by ERISA. So clearly any severance agreement issue pursuant to that plan wouldn't be covered. And here it doesn't make sense because plaintiff expressly alleged in his complaint that Erickson violated ERISA by failing to pay him benefits due under the release. And the release on its face says it is being issued in accordance with the state clause in ERISA states that ERISA will supersede any and all state laws that as they may relate to any employer benefit plan. The Supreme Court held in the Pilot Life case and this court held in the Corcoran case that a state cause of action relates to a benefit plan whenever it has a connection with or reference to such a plan. Here that's obviously what we have. It's a release agreement that is both contemplated in the original plan and which then references the plan. We rarely see anybody making this argument because of a lot of case law out there on it. But interestingly, one such case comes directly out of the Eastern District of Texas where this case came from in the Hernandez v. Alcatel case where the plaintiff in that case said my claim is governed by the four corners of this severance and release agreement. It's not governed by ERISA. And the court correctly disagreed saying this agreement specifically references the severance plan. It's governed by ERISA. It was obviously administered pursuant to ERISA. All of these claims, these appellate procedures were offered. And absent that plan, the agreement would never have been offered. So they're obviously all bound up and should be interpreted by ERISA. Will you please address Mr. Sanford's observation that the plan speaks of offset, not just a wholesale refusal to pay? Two things, Your Honor. Number one, Mr. Sanford's actually incorrect. That was not raised in the appellate or the plan administrator process. So that argument was waived by his failure to do so. This court has held that where an issue like that is not raised in the administrative process, there is nothing for the court to review, this court or the court below to review. And that's a fair comment for you to make about waiver. But let's assume that there's not a waiver problem. And assuming it isn't waived, all the plan provides for is, and again, the plan, not the severance agreement, but the plan provides for the option of an offset. There is no requirement that Erickson offset any amounts due to the employer. And then furthermore, Mr. Gomez went on to expressly agree and assent to the requirement of him in the release. So whether or not they had the option to offset under the plan doesn't change the fact that he, in fact, agreed that it was reasonable and complied with signing a release agreement that imposed that condition proceeding. So I think this case, Your Honors, with regard to jurisdiction, it's a far cry from Fort Halifax and it's a far cry from Wells. I mean, you have here a case of plans that have been administered for years and certainly were in this case as Erickson plans. If ERISA applies, then the plans allow the administrator discretion, if the ERISA applies and the plans allow the administrator discretion to interpret them, which they certainly do. That's explicitly in the plans. The standard of review for both the district court and for this court is abuse of discretion. And the appellant doesn't dispute the administrator had that discretion. And indeed, the record is full of the administrator and plan administrative committee actually examining the evidence and exercising that discretion with respect to the appellant's appeal. So the inquiry at this point is two-part. The first question we have is, was the administrator's decision or interpretation a proper legal interpretation? If the answer to that question is yes, the court doesn't even go on to the second part of the analysis. But let's look at that question. If ERISA applies, then it applies to his claim. It applies to his entire claim. And the plan has provisions that would entitle him to the release. And those provisions are contained within the plan, the top contributor plan, and those terms as they are incorporated specifically in the severance agreement and release that he signed. His first argument before the administrator was, well, I wasn't required to return the property in order to be entitled to severance. But again, both the plans clearly require the execution and, as the appellant concedes, compliance with a satisfactory release in order for the payment to be made. The appellant was on notice at several points during his employment that he was afforded Erickson property, access to it, and that that property needed to be returned at the end. So this should not have come as a surprise. But it also should not have come as a surprise that Erickson was going to issue a release that had terms that it expected compliance with. And with respect to the top contributor plan, all Erickson employees are entitled to participate in the standard plan. But with respect to the top contributor plan, he was actually issued a letter that he had to sign and accept to be part of that plan. And that letter further expressly acknowledged in just the couple of paragraphs that it contained that the contingency would be a satisfactory release. Further, in that release, there's really two areas of note. First, he acknowledged that he would not receive the compensation except for his execution of the agreement and his fulfillment of the promises therein. That's one. And then he acknowledges that the payment would not be made until after the date he returns all outstanding Erickson property to Erickson. So it's both a condition precedent to being entitled to the severance at all, and also it's a temporal trigger to the payment of the severance. So it's really recited twice in the release agreement. And yes, it says that this supersedes any prior understanding about the conditions for payment, but it also specifically incorporates the terms of the plan. So the release agreement is clearly indicating that it is to be read in conjunction with the plan, which is exactly what was done because he was afforded the necessary ERISA appeals that only appear in the plan. They also acknowledge that he's not entitled to receive any other type of severance. So based on all this, the plan administrator properly considered the plan, the top contributor plan, the release, and determined, okay, my legal determination is that returning the property was a condition of getting severance. So he goes on to say, okay, my second argument to the plan administrator was Erickson's data is not Erickson's property, which, frankly, is a fairly incredible statement to make for someone employed in the technology field. I mean, obviously, property, the agreement does not confine itself to tangible property, and clearly the legal definition of property doesn't confine itself to that. And furthermore, he executed multiple documents making clear that he knew that confidential information and non-tangible things were the property of Erickson. So he clearly should have understood that that was to include all property. So that was the next determination. The plan administrator determined, no, Erickson's data is its property. That's a legally correct interpretation. From there, his next argument was, okay, well, fine, I deleted the data, but I either deleted the data through a laptop wipe off the computer for legitimate reasons, or I've effectively returned the property because I've given you this hard drive that contains some backups. The plan administrator carefully considered each one of those. It found none of those were availing, and those, I won't go into all those reasons here, but one of them was certainly that none of the reasons he gave, which he gave about three conflicting reasons for why he conducted the laptop wipe, none of them justified the wipe, and all of them admitted that he had destroyed the data. Further, upon, they didn't even have to take this step, but they actually conducted a forensic review and considered this backup hard drive that he contained, he contended contained the backup data for the property, analyzed it, and determined it didn't contain all the backup data for the property, and actually had evidence of some 30 manually deleted files that could never be recovered. And then, actually, in his plan administrator appeal, his attorney's letter concedes that, yes, in fact, he deleted the data, and in his plan administrative committee documents, he submitted an email admitting that he didn't even know how often the backup was done and what the backup might have contained. So, based upon all of that, Erickson's conclusion was three things. He had to comply with the requirement that he return the property, the Erickson data was Erickson property, and he hadn't returned the Erickson data. And so, based on those three determinations, the correct legal determination was he had not satisfied the condition proceeding to receive the severance agreement, even if the court were to determine that's wrong. Well, how? Very briefly explain how this is harmful to Erickson if he, in fact, he deleted the data. If he deleted the data. I mean, it's not the only source for that data, right? I mean, what was Erickson going to do with this data, according to the record? There is, according to the record, there was indication that the data had value to Erickson, and specifically, there was one instance where there was a project he'd been working on for six or seven months, and they had none of the backup data that evidenced the negotiations surrounding that project. So, if there had ever been a dispute down the road on what those negotiations were and what actually was agreed to, Erickson would have no way to analyze that. And so, it certainly had value, and he certainly contends, admits that it was Erickson's property. But even if the court were to determine those were in any way legally incorrect, you can only find an abusive discretion if the administrator acted arbitrarily or capriciously. And really, that means there's no rational connection between the known facts in the decision or no rational connection between the found facts and the evidence. And this court held in the Corey v. Liberty Life case that that decision need only fall somewhere on the continuum of reasonableness, even if it's at the low end. Even if the district court or this court would have come to a different decision, that's not the determination. And furthermore, the court's limited to the facts known to the plan administrator at the time of the decision. So, was it reasonable for the administrator to consider the plans and the release agreement and the appellant's specific acknowledgement of what he was going to agree to do in order to make that determination? And it certainly was. There was no basis for any of the claimed excuses that he had for deleting the data, and in fact, he did admit that he deleted the data. He acknowledged that Erickson's property wasn't limited to tangible property. He acknowledged that returning the property was going to be a condition precedent. He gave conflicting reasons for why he had wiped it. A forensic analysis didn't save his claim. And despite being given months to conduct his own analysis, and he was actually invited to conduct his own analysis and submit additional information to the plan administrator, he failed to do so. Last item, this conflict of interest argument. Your Honors, there's zero evidence in the record of a conflict of interest, and this Court held in the Vega case there's no duty to reasonably investigate on the part of the plan administrator. Well, I think a fair way to look at that, the way the courts have is acknowledge that there may be a conflict of interest, but it's a sliding scale. I mean, obviously, it's self-funded. There's going to be somewhat of a conflict, but the Supreme Court has dealt pretty effectively with that. Certainly, Your Honor, and if I could respond to that, yeah, this Court in the Gerasin and the Hamilton cases addressed that and found that simply because you have the employer that both administers and pays the severance doesn't in and of itself rise. And we deal with those cases all the time. Yes, we're aware of the case law there. Thank you, Mr. Bell. Thank you, Your Honor. Mr. Sanford, you've saved time for rebuttal. Thank you, Your Honor. To answer Judge Costa, your question, we do not use the word offset in the administrative record. However, the counsel at the time in the appeal made the argument that very clearly that neither plan states that the payment is contingent on return of company a satisfactory waiver and release of claims. Mr. Gomez has met this requirement. Therefore, Erickson has no basis for denial of the severance plan. I know that was argued, but I hadn't seen the offset, which is why. Okay. No, we did not use the word offset. It'd be awfully difficult to offset, wouldn't it? I mean, it's this intellectual property basis. I mean, how do you value that? I mean, that's a difficult determination. One way to value it is to make a determination of what it was, and it's not six months because it was a record of backups. So if anything, it's a few weeks. And that can be done by sitting down with Mr. Gomez and say, what did you do to make this final? These were proposals to clients. What did you do to make this final proposal? If you can't figure out, by looking at the proposal itself, what I did, well, let's sit down and I'll recreate this. And how much time is it going to take to recreate this, and how much is it going to cost Erickson to sit down and do that? Very little. They didn't go into that. They didn't try to do that. They didn't try to understand what it was. They didn't even ask what it was or have it be recreated. That shows that there was no value. There was no concern about it. They got their final product. That's all they cared about. They didn't even take one step towards a decision to have discretion one way or the other. They didn't even make that issue. There's nothing in the record explaining why he deleted this, is there? There isn't. He didn't try to give a good explanation. He did not. It was purely private. It was a purely private issue. Well, that was my understanding, that he was deleting private information. That's what he was trying to do. Did he say that overlapped into the Erickson data? He tried to wipe out his complete laptop, back it up to a hard drive, and give it a hard drive over. The hard drive was, I don't know the technical term. Corrupted, maybe. Corrupted. It was corrupted. That was the problem. It had been backed up on a regular basis to Erickson. Erickson doesn't dispute that it has all the final documents of his work. What they're saying, they may be missing his underlying work product. An agreement to return property is not a release. A release is not an agreement to return property. Those are two different things. That's an additional term. To require additional term, something that has to be affirmatively done by someone else, there must be something given in exchange. Nothing was given in exchange. What's to stop Erickson from saying, all right, we're not going to give you the severance unless you sign this release, and this release has a non-compete. This release has an agreement that you have to consult with us for another six months or answer emails, or any other number of unilaterally add conditions that are not in the plan, that are not a release. You can't simply say this is a release, and yes, it adds affirmative obligations, but you said you would sign a release. That's the argument. That, again, is both jurisdictional and an abuse of discretion. The one thing I would say is we're not really relying heavily on the return of property. I understand that that's not it. If that was the only argument, we would lose. But just to clarify, their own documents do not require non-tangible return. In the Record of Appellees Appendix, Record Excerpts 230 or 15-41479.660, return of information specifically says tangible items. The confidentiality part says do not retain. It doesn't say return. It says only retain, and that's on the Appellee 231. It's only do not take with me any drawings. There's no dispute to that. Again, without the line. Thank you, Mr. Chairman, for your case, and all of today's cases are under submission.